IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO.  1:08CV148

| | |
|---|---|
| APRIL SUMMERLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | **MEMORANDUM AND** |
| ) | **O R D E R** |
| MICHAEL ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ———————————————— ) | |

**THIS MATTER** is before the Court on the parties' cross-motions for

summary judgment.  For the reasons that follow, Defendant's motion for

summary judgment is granted, and Plaintiff's motion for summary judgment

is denied.


**I.  PROCEDURAL HISTORY**

On April 11, 2008, Plaintiff filed a complaint against the

Commissioner of the Social Security Administration (hereinafter

"Commissioner" or "Defendant") based on the denial of her application for

Title II disability insurance benefits and Title XVI Supplemental Security

Income benefits. Plaintiff initially filed applications on July 21, 2004, alleging an onset of disability date of April 15, 2003. **Administrative Record ("R."), filed August 26, 2008, at 64-66.** Her claims were denied initially and again on reconsideration. *Id.* **at 51-57.** Plaintiff requested and received a hearing before an administrative law judge ("ALJ") on May 17, 2007. Plaintiff was present with counsel and testified. *Id.* **at 16, 34.** On August 31, 2007, the ALJ entered an order denying her application for social security benefits. In the order, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from her alleged date of onset of April 15, 2003, through the date the decision was entered. *Id.* **at 34.** Plaintiff has exhausted any remaining administrative remedies and this matter is now ready for resolution under 42 U.S.C. § 405(g).

## II. FACTUAL HISTORY

Plaintiff was 35 years old at the time of her hearing; age 32 at the time she applied for social security benefits. Plaintiff testified that she lives with her husband and her two children, who are eight and four years of age. Her youngest child was born May 15, 2003, roughly a month after her

alleged onset of disability on April 15, 2003. Her husband works as a correctional officer; Plaintiff has not worked since May 2003. Plaintiff dropped out of school in the tenth grade and later earned a GED and completed two quarters of general education in college. *Id.* **at 626-27.** Plaintiff's prior work history includes a two separate periods at Radio Shack where she worked as a salesperson; one from 1995-1997, and the other from 1999 to 2003. According to Plaintiff, the work involved sitting, standing, bending and stooping, and she was generally able to sit for an hour or so a day and would typically stand 6 hours during the workday. Plaintiff often lifted 100 pound televisions at work with assistance. *Id.* **at 628-30.** Plaintiff explained she quit her job after having complications with her pregnancy and "she just couldn't see herself going back there and [she] had almost exploded on a couple of people." *Id.* **at 629.** Plaintiff testified that she had not returned to work because of back pain and mood swings: "I'm just, I really don't know how to explain that somebody can say something wrong to me and I may verbally or physically do something," and although she testified she had yet to assault anyone, she came very close. *Id.* **at 632.** Additionally, she testified she became angry with her manager when he called her doctor to inquire about her medical situation

and this is also one of the reasons she never returned to Radio Shack. *Id.* **at 634.**

Plaintiff testified that she no longer works, in part, because she cares for her oldest son full-time. Plaintiff listed a variety of health issues her son suffers from: frontal lob seizures, attention deficit hyperactivity disorder, and possibly bipolar disorder. *Id.* Her son's care requires her to take him to numerous doctor's appointments throughout any given week. Plaintiff testified that her son has had serious issues even while she worked full-time but that his difficulties have increased since she has been out of work. Plaintiff's youngest child attends a Head Start education program half-days.

Plaintiff testified about her health at the time of the hearing. She explained that she had good and bad days. *Id.* **at 636.** She has had thoughts of suicide in the past although she never formulated a specific plan to carry this out, and was in fact deterred from contemplating suicide after thinking of the impact on her children. *Id.* **at 638.**

Other than her position at Radio Shack, Plaintiff has prior work experience as a seamstress for a garment manufacturer. In this position, she sewed zippers on to pants and sat for most of the workday with little or

no lifting. *Id.* **at 630.** Prior to this job, Plaintiff worked as a cashier at a gas station for around six months and she worked as a sander at Ethan Allen where she routinely lifted 25 pounds. In 1994, Plaintiff worked as a certified nursing assistant for Brookwood Madison Convalescent Center and Toe River Health District. *Id.* **at 632.** A vocational expert, Roy Sumpter, testified at Plaintiff's hearing. The vocational expert described Plaintiff's past relevant work as follows: retail sales, classified by the DOT as light and semi-skilled; sewing, classified by the DOT as light and unskilled; convenience store clerk, classified as light and unskilled; sander, light and unskilled; and the nursing assistant, classified as medium and semi-skilled. *Id.* **at 650-51.** He also examined the state agency's physical residual functional capacity assessment, and Plaintiff's prior work history and opined that Plaintiff could perform the full range of her past employment. *Id.* **at 651.** The ALJ posed a hypothetical to the vocational expert that included a limitation on Plaintiff's need to engage in complicated interaction with the public; the vocational expert testified that Plaintiff could still perform her past relevant work as a sander, seamstress, or nursing assistant in certain situations. *Id.* He then described numerous jobs existing in substantial numbers that Plaintiff could perform despite her

limitations in dealing with the public. He listed, for example, medium and
unskilled jobs that include kitchen help, sweeper cleaner, and food service
worker. *Id.* **at 652.**

Finally, the vocational expert was asked to assume that Plaintiff had
some of the symptoms she described in her testimony: wide mood swings,
severe pain that would not allow her to remain in one position for more
than 15 to 30 minutes, and inability to sleep at night that results in extreme
fatigue during the work day. Based on these limitations, the vocational
expert testified that Plaintiff would not be able to work. *Id*. **at 653.**

## II. STANDARD OF REVIEW

In considering the decision of the Commissioner to deny disability
insurance benefits, this Court does not conduct a *de novo* review. ***Smith
v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).** The Social Security Act
provides that the reviewing court "must uphold the factual findings of the
Secretary if they are supported by substantial evidence and were reached
through application of the correct legal standard." ***Craig v. Chater*, 76
F.3d 585, 589 (4th Cir. 1996);** *see* **42 U.S.C. § 405(6)(2001)**. Substantial
evidence is defined as that evidence which "a reasonable mind might

accept as adequate to support a conclusion." **Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).** Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." **Craig, 76 F.2d at 589 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).** It is not the role of this Court to "either weigh the evidence or to substitute judgment for that of the Secretary if that decision was supported by substantial evidence." **Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).** The ultimate issue for this Court to decide "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." **Craig, 76 F.3d at 589.**

Each party has moved for summary judgment, claiming they are entitled to judgment as a matter of law. Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. **Fed. R. Civ. P. 56(c).** A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. **Shaw v. Stroud, 13 F.3d 791, 798 (4th**

Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Where the parties have cross-moved for summary judgment, the Court will consider each motion separately. Thus, in considering the Plaintiff's motion, Plaintiff as the moving party has an initial burden to show a lack of evidence to support Defendant's case. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If this showing is made, the burden then shifts to the Defendant who must convince the Court that a triable issue does exist. *Id.* Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]." *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* After consideration of the Plaintiff's motion, the same procedure is used to determine Defendant's motion for summary judgment.

In considering the facts of the case for purposes of these cross-motions, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

## III.  DISCUSSION

Disability under the Social Security Act means the inability to engage in any substantial gainful activity due to physical or mental impairment expected to result in death or to last for a continuous period of not less than twelve months.  In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process.  **20 C.F.R. § 416.920.**  If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied.  ***Pass v. Chater*, 65 F.3d 1200, 1203 (4ᵗʰ Cir. 1995).** The claimant "bears the burden of production and proof during the first four steps of the inquiry." ***Id.* at 1203 (citing *Hunter*, 993 F.2d at 35).**  If the claimant carries his or her burden through the fourth step then "the burden shifts to the Secretary in the fifth step to show that other work is available in the national economy which the claimant could perform." ***Hunter*, 993 F.2d at 35**.

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant.  ***Pass*, 65 F.3d at 1203.**  In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability in March 2003, but

noted that "it is not at all clear that the claimant's lack of work is caused by her disability, as opposed to that of her child (who receives SSI and clearly requires a great deal of care."). **R.,** *supra***, at 4**.

Second, the applicant must show a severe impairment.  If the applicant does not show any impairment or combination thereof which significantly limits the physical or mental ability to perform work activities, then no severe impairment is shown and the applicant is not disabled. ***Pass***, **65 F.3d at 1203.** The ALJ found that Plaintiff had the following severe impairments: mood disorder, personality disorder – not otherwise specified, and mild degenerative disc disease.  **R.,** *supra***.**  Plaintiff also alleged that she had bipolar disorder, migraine headaches, and fibromyalgia. The ALJ carefully reviewed the medical records submitted by Plaintiff and concluded that none of these alleged ailments were "medically determinable impairments." This conclusion was based on Plaintiff's widely inconsistent descriptions of her alleged symptoms and the lack of support for her claims by the medical records. ***Id.***  The undersigned has reviewed

the ALJ's decision and concludes that the ALJ's decision is supported by the substantial medical evidence in the record.  ***See id.* at 4-15**.[1]

Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the applicant is disabled regardless of age, education or work experience.  ***See Pass*, 65 F.3d at 1203.**  The ALJ found that Plaintiff did not have any impairment that met one of the listed impairments; Plaintiff does not dispute this finding and the undersigned finds the ALJ's decision is supported by substantial evidence in the record.

Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  *Id.*  In the present case, the ALJ found that Plaintiff was not disabled because she could still perform past relevant work and noted the following regarding Plaintiff's residual functional capacity:

---

[1]The ALJ provided an exhaustive review of the testimony and medical records. The undersigned has examined each medical record referenced in the ALJ's decision and concludes that these records provide substantial evidence to support the decision.

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to sit, stand or
> walk a maximum of six hours each in an eight hour workday
> and to lift and carry a maximum of 25 pounds frequently and a
> maximum of 50 pounds occasionally.

**R., *supra*, at 30.** The ALJ concluded the Plaintiff retained the ability to perform medium work; however, based on her mental limitations, Plaintiff would not be able to engage in "complex public interaction (such as retail sales) because she tends to be irritable, exaggerates and dramatizes, such that she could not be a successful salesperson or negotiator of complex interactions with strangers." *Id.* Plaintiff contends the ALJ erred in determining her residual functional capacity. The ALJ's decision carefully examines the testimony of both Plaintiff and the vocational expert, and the remaining evidence of record, including the opinions of treating physicians and other medical evidence in reaching the conclusion that Plaintiff retained the residual functional capacity to perform past relevant work that was medium and unskilled. Importantly, the ALJ specifically found that Plaintiff's mental limitations restricted the available medium, unskilled work, but despite this restriction, the evidence shows that there were still significant jobs similar to those in her past relevant work history that Plaintiff could perform.

In evaluating Plaintiff's symptoms, and therefore, whether Plaintiff's description of her symptoms were credible, the ALJ properly considered 20 C.F.R. §§ 404.1529(c) and 416.929(c), which describe the kinds of evidence that must be considered when assessing Plaintiff's claims. The ALJ provided a thorough discussion of Plaintiff's daily activities that includes physical activities such as driving her children to school, shopping, cleaning the house, and being a volunteer firefighter. The ALJ concluded that the physical pain complained of by Plaintiff did not have a significant impact on her ability to perform medium work. Moreover, the ALJ concluded that Plaintiff could not identify any particular daily activities that triggered her alleged pain. Plaintiff, in her statements to health professionals and especially in her testimony, provided inconsistent examples of her alleged pain and its origins. The ALJ did not credit this testimony and found that it was not supported by the medical evidence. The undersigned cannot conclude that this finding is in error. The undersigned has examined the medical records and concludes that the ALJ's conclusion is supported by substantial evidence.

Plaintiff contends that the ALJ improperly discredited the opinions of Dr. Zeisz and Ms. Keene. **Plaintiff's Brief in Support of Motion for**

**Summary Judgment, filed October 8, 2008, at 9.** Plaintiff relies on the opinion of Dr. Jennifer Zeisz, a clinical psychologist, that examined Plaintiff one time on September 2, 2004. ***See* R.,** *supra*, **at 214.** In her one page report, Dr. Zeisz summarizes the complaints that Plaintiff makes to her and provides no discussion of the origin of these mental limitations and simply concludes that Plaintiff's "current level of symptoms may make it difficult for her to maintain employment." *Id*. The ALJ specifically considered this opinion and found it was inconsistent with the "entirety of the evidence." The undersigned finds the ALJ's conclusion is supported by substantial evidence.

Plaintiff disagrees with the ALJ's discrediting of the evidence provided by Alice Keene, who provided a scant summary of Plaintiff's treatment sessions at the now defunct New Vistas Behavioral Health Services. **R., at 33, 320-21.** Plaintiff concedes that Ms. Keene is not an "acceptable medical source," but contends that the Regulations provide that the ALJ should consider evidence from other sources in evaluating Plaintiff's impairments. **Plaintiff's Brief, at 12.** In reviewing the records submitted by New Vistas, it appears Plaintiff was responding reasonably well to therapy and medication. **R.,** *supra*, **at 368-469.** The fact that

Plaintiff may have "up and down" days does not invalidate the ALJ's finding that she could perform past relevant work. The ALJ's decision makes plain that the entire record was examined and the ALJ specifically assigned weight to all of the evidence in reaching the determination that Plaintiff's mental impairment still allowed her to perform limited medium, unskilled work when extensive interaction with the public was eliminated. There is no question that such medium level jobs exist in significant numbers and Plaintiff does not argue otherwise. [2]

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motion for summary judgment is **DENIED**.

A Judgment dismissing this action is filed herewith.

---

[2]The ALJ found that Plaintiff could perform a significant range of past relevant work, thus there was no analysis of Step Five of the Sequential Evaluation Process.

16

Signed: August 26, 2009

Lacy H. Thornburg
United States District Judge